**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : | |
| **Applicant,** | : | **24 Misc. ___** |
| **-against-** | : | **ECF Case** |
| **ERIC MCKENZIE COBB,** | : | |
| **Respondent.** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF SECURITIES AND EXCHANGE COMMISSION'S APPLICATION FOR AN ORDER TO SHOW CAUSE AND FOR AN ORDER REQUIRING COMPLIANCE WITH INVESTIGATIVE SUBPOENA**

Richard G. Primoff
Lindsay S. Moilanen
Bennett Ellenbogen
Securities and Exchange Commission
New York Regional Office
100 Pearl Street, Suite 20-100
New York, New York 10004
(212) 336-0148 (Primoff)
primoffr@sec.gov

April 9, 2024

## TABLE OF CONTENTS

Table of Contents ..... ii

Table of Authorities ..... ii

PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 2

I. Respondent ..... 2

II. The Commission's Investigation ..... 2

ARGUMENT ..... 5

I. The June 26 Subpoena Should Be Enforced. ..... 5

II. Respondent Cobb Cannot Demonstrate Any Legitimate Reason the June 26 Subpoena Should Not Be Enforced. ..... 9

CONCLUSION ..... 9

## TABLE OF AUTHORITIES

**Cases**

*Endicott Johnson Corp. v. Perkins*, 317 U.S. 501 (1943) .......... 7

*In re McVane*, 44 F.3d 1127 (2d Cir. 1995) .......... 6, 7

*RNR Enters., Inc. v. SEC*, 122 F.3d 93 (2d Cir. 1997) .......... 6, 7, 8, 9

*SEC v. Arthur Young & Co.*, 584 F.2d 1018 (D.C. Cir. 1978) .......... 7

*SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047 (2d Cir. 1973) .......... 9

*SEC v. Finazzo*, 543 F. Supp. 2d 224 (S.D.N.Y. 2008) .......... 7

*SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735 (1984) .......... 5

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) .......... 6

*United States v. Powell*, 379 U.S. 48 (1964) .......... 7, 8

**Statutes and Rules**

17 C.F.R. § 201.232(c) .......... 8, 9

17 C.F.R. § 201.150(d)(1) .......... 9

15 U.S.C § 77v(b) .......... 6

15 U.S.C. § 80b-9(c) .......... 6

Section 209(a) of the Investment Advisers Act of 1940 (the "Advisers Act"),

15 U.S.C. § 80b-9(a) .......... 2n, 5

Advisers Act Section 209(b), 15 U.S.C. § 80b-9(b) .......... 2, 5

Section 19(c) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77s(c).......... 2, 5

Securities Act Section 20(a), 15 U.S.C. § 77s(a).......... 2n

Securities Act Section 20(c), 15 U.S.C. § 77s(c).......... 2n

Section 21(a) of the Securities Exchange Act of 1934 ("Exchange Act") 15 U.S.C. § 78u(a)..... 2n

Exchange Act Section 21(c), 15 U.S.C. § 7u(c) ........................................................................ 6, 6n

Exchange Act Section 21(b), 15 U.S.C. § 78u(b)........................................................................ 2, 5

The Securities and Exchange Commission ("Commission") respectfully submits this memorandum of law in support of its Application for an Order to Show Cause and for an Order Requiring Compliance with Subpoena ("Application"). For the reasons set forth below, and in the accompanying Declaration of Bennett Ellenbogen dated April 9, 2024 ("Ellenbogen Decl.") and the exhibits attached thereto, the Commission respectfully requests that the Court enter an order directing respondent Eric McKenzie Cobb ("Respondent" or "Cobb") to comply with the investigative subpoena dated June 26, 2023 (the "June 26 Subpoena") the Commission lawfully issued and served on him.

## PRELIMINARY STATEMENT

Cobb is a former investment adviser of an investment advisory firm registered with the Commission. Among other things, the Commission is investigating whether Cobb violated the federal securities laws by engaging in unlawful trade allocation practices—*i.e.*, "cherry-picking" activity in which he allocated winning trades to himself or affiliated accounts, to the detriment of other client accounts he managed.

Since May 2023, the Commission has served multiple subpoenas on Cobb, seeking both the production of documents and his testimony. Cobb has refused to comply with any of them, including the most recent subpoena dated June 26, 2023, and personally served on him on June 27, 2023. Cobb has provided no reason for his non-compliance, and, indeed, has ignored multiple emails and telephone calls from Commission staff reminding him of his obligations, and has not communicated with the Commission in any way. Cobb has no legitimate reason for failing to comply with the Commission's subpoenas, and the Court should therefore order him to comply with the June 26, 2023 subpoena promptly, so that the Commission can continue its investigation.

## STATEMENT OF FACTS

### I. Respondent

Cobb is a resident of Spartanburg, South Carolina. Ellenbogen Decl. ¶¶ 6, 10, 16, 25, and Exs. 1, 4 thereto. From March 21, 2016 to August 1, 2022, Cobb was employed as a "wealth advisor" at SeaCrest Wealth Management, LLC ("SeaCrest"), an investment advisory firm registered with the Commission, and in that capacity provided investment advisory and management services to clients of SeaCrest. Ellenbogen Decl. ¶¶ 3, 7, and Exs. 1 and 3 thereto. His current employment status is unknown to the Commission. *Id*. ¶ 7.

### II. The Commission's Investigation

On March 11, 2023, the Commission issued an Order Directing Private Investigation and Designating Officers to Take Testimony (the "Formal Order") in its non-public investigation entitled *In the Matter of SeaCrest Wealth Management, LLC*, Internal File No. NY-10513 (the "Investigation").[1] Among other things, the Formal Order designates, pursuant to Section 19(c) of the Securities Act of 1933 [15 U.S.C. § 77s(c)] ("the "Securities Act"), Section 21(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78u(b)] (the "Exchange Act") and Section 209(b) of the Investment Advisers Act of 1940 [15 U.S.C. § 80b-9(b)] (the "Advisers Act"), certain individuals, including the Declarant in support of this Application, as officers of the Commission empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance,

[1] Section 20(a) of the Securities Act, Section 21(a) of the Exchange Act and Section 209(a) of the Advisers Act authorize the Commission to conduct investigations. *See* 15 U.S.C. §§ 77t(a), 78u(a) and 80b-9(a).

take evidence, and require the production of any books, papers, correspondence, memoranda, or other records deemed relevant or material to the investigation.[2]

The Commission is investigating, among other things, whether Cobb or any other person or entity has violated provisions of the federal securities by, among other things, making false statements of material fact or failing to disclose material facts concerning, among other things, trade allocations or trade allocation practices—and specifically, whether he has engaged in unlawful "cherry-picking," in which he allocated winning trades to his or his affiliated accounts, to the detriment of his clients. Ellenbogen Decl. ¶ 4.

In connection with the Investigation, the Commission staff since May 2023 has repeatedly served Cobb with investigative subpoenas seeking the production of documents from him, and his testimony before the Commission staff. On May 23, 2023, the Commission staff issued and served on Cobb, by UPS overnight delivery and email, a subpoena for the production of documents. Cobb did not respond to that subpoena or communicate with the Commission staff in any way in response to its follow-up email and phone message. Ellenbogen Decl. ¶¶ 10-12, and Exs. 5 and 6. The Commission staff, for that reason, then issued and served Cobb, by email, with another subpoena dated June 6, 2023, again seeking responsive documents as well as investigative testimony. Cobb did not respond to that subpoena and ignored the Commission staff's follow-up emails on June 13 and 23, 2023. *Id.* ¶¶ 13-14, and Exs. 10-12.

In view of Cobb's non-responsiveness, the Commission staff issued the June 26 Supboena to Cobb, for testimony and the production of documents and retained a process server to serve Cobb personally with it—which was successfully effected on June 27, 2023, after Cobb

---

[2] Commission formal orders are not public, and therefore the Commission has not included a copy of the Formal Order with this Application. The Commission respectfully requests that the Court conduct an *in camera* review if the Court wishes to examine it.

telephoned the process server and arranged to meet with her at a CVS location near his residence. Ellenbogen Decl. ¶¶ 15-17 and Exs. 13-15. Cobb never responded to, or communicated in any way with, the Commission staff regarding, the June 26 Subpoena; he did not produce responsive documents or appear for testimony; and he ignored the staff's follow-up telephone calls and emails dated July 17, 2023, November 28, 2023, December 12, 2023, and January 10, 2024. *Id.* ¶¶ 17, 21-24, and Exs. 17-20.

The Commission staff then again personally served on Cobb on February 27, 2024 a letter dated February 20, 2024 ("February 20 letter") that explicitly advised Cobb that if he continued not to respond to June 26 Subpoena, the Commission might seek judicial enforcement of it:

> Please note that if continue to refuse to produce documents responsive to the subpoena or to contact me to set up your sworn testimony, the SEC may seek to enforce the subpoena in Court.
>
> Please produce all responsive documents and contact me to set up your testimony by March 5, 2024.

Ellenbogen Decl. ¶ 25 and Exs. 21, 22. Cobb did not respond to the February 20 letter.

The Commission staff then emailed Cobb again on February 29, 2024, notifying him of adjourned dates for the production of his documents, and requesting he contact the staff to discuss a date for his testimony. Cobb did not respond to that email, which also reiterated that the Commission might seek judicial intervention for his continuing non-compliance with the June 26 Subpoena. *Id.* ¶ 26, Ex. 23. To date, Cobb has not responded to the February 20 letter or February 29 email, the June 26 Subpoena, or any of the Commission staff's repeated efforts to communicate with him. *Id*. ¶¶ 26-27.

## ARGUMENT

### I. The June 26 Subpoena Should Be Enforced.

The Commission properly issued and served the June 26 Subpoena on Cobb to investigate whether, among other things, Cobb "cherry-picked" trades—assigning winning trades to his or affiliated accounts to the detriment of his clients, and thereby misrepresented to clients material facts, or failed to disclose material facts, concerning his trade allocations or trade allocation practices, and if, in doing so, he has violated the federal securities laws. Ellenbogen Decl. ¶ 4. Cobb has refused to comply with the June 26 Subpoena. The Commission satisfies each of the requirements for enforcement of the June 26 Subpoena, and Cobb has not offered, and cannot offer, any legitimate reason why it should not be enforced. The Court should therefore order Cobb to promptly comply with the June 26 Subpoena.

The Commission has "broad authority to conduct investigations into possible violations of the federal securities laws and to demand production of evidence relevant to such investigations." *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741 (1984). Securities Act Section 19(c), Exchange Act Section 21(b) and Advisers Act Section 209(a) grant the Commission broad authority to subpoena witnesses to testify under oath in investigations. 15 U.S.C. § 77s(c) ("For purposes of all investigation which, in the opinion of the Commission, are necessary and proper…any officer or officers designated by [the Commission] are empowered to administer oaths and affirmations, subpoena witnesses [and] take evidence."); 15 U.S.C. § 78u(b) ("For the purpose of any such investigation…any officer designated by [the Commission] is empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance [and] take evidence."); *see also* 15 U.S.C. § 80b-9(b).

Each of the foregoing Acts further grant the Commission broad authority to seek judicial enforcement of an investigative subpoena for testimony if a witness refuses to appear pursuant to such a subpoena. Specifically, Section 21(c) of the Exchange Act provides:

> In case of contumacy by, or refusal to obey a subpoena issued to, any person, the Commission may invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on . . . in requiring the attendance and testimony of witnesses . . . . And such court may issue an order requiring such person to appear before the. . . officer designated by the Commission . . . to give testimony touching the matter under investigation or in question; and any failure to obey such order of the court may be punished by such court as a contempt thereof.

15 U.S.C. § 78u(c); *see also* 15 U.S.C § 77v(b); 15 U.S.C. § 80b-9(c).[3]

"The courts' role in a proceeding to enforce an administrative subpoena is extremely limited." *RNR Enters., Inc. v. SEC*, 122 F.3d 93, 96–97 (2d Cir. 1997) (quoting *In re McVane*, 44 F.3d 1127, 1135 (2d Cir. 1995)) (affirming order directing compliance with Commission subpoenas). A court should enforce administrative subpoenas if the information sought is "within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).

To obtain an order enforcing the June 26 Subpoena, the Commission need only demonstrate that it meets four requirements: "[1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the Commission['s] possession, and [4] that the administrative steps required…have been followed." *RNR Enters.*, 122 F.3d at

---

[3] Venue properly lies in the Southern District of New York under Section 21(c) of the Exchange Act because this District is the jurisdiction in which the investigation "is carried on." (Ellenbogen Decl. ¶¶ 1-5, 8-9.)

96–97 (quoting *United States v. Powell*, 379 U.S. 48, 57–58 (1964)); *see also SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1021, 1024 (D.C. Cir. 1978) (affirming the enforcement of Commission subpoenas). "An affidavit from a governmental official is sufficient to establish a prima facie showing that these requirements have been met." *RNR Enters.*, 122 F.3d at 97 (quoting *McVane*, 44 F.3d at 1136). The Commission satisfies each of the four *prima facie* requirements for enforcement of the June 26 Subpoena.

*First*, the Commission is conducting the Investigation for a legitimate purpose: to determine whether Respondent or others have violated anti-fraud or other provisions of the securities laws. *See RNR Enters.*, 122 F.3d at 97 (holding that an investigation into potential securities law violations reflects a "legitimate investigatory purpose"); *SEC v. Finazzo*, 543 F. Supp. 2d 224, 227 (S.D.N.Y. 2008); *Arthur Young & Co.*, 584 F.2d at 1024.

*Second*, the Commission seeks documents and testimony relevant to the Investigation. To satisfy this requirement, the Commission need only show that the information sought is "not plainly incompetent or irrelevant to any lawful purpose." *Arthur Young & Co.*, 584 F.2d at 1029 (quoting *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943)). Courts "defer to the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong." *RNR Enters.*, 122 F.3d at 97 (quoting *McVane*, 44 F.3d at 1135).

The June 26 Subpoena seeks documents concerning Cobb's trading allocation practices at SeaCrest, compliance manuals and procedures, communications regarding the same, and complaints, reviews or inquiries of the same (Ellenbogen Decl. ¶¶ 17-18), and testimony on those subjects as well. This information is highly relevant to the method and intentions by

which Cobb conducted trade allocations among his client accounts, and to the Commission's Investigation. *See id*. at ¶¶ 19-20.

*Third*, the Commission does not already have the information the June 26 Subpoena seeks. Although other parties have produced documents responsive to the same categories directed to Cobb in the June 26 Subpoena, Cobb may have responsive documents in his possession, custody or control that the Commission has not obtained from other parties—including, for example, text and instant messages, or other "off-channel" communications with clients or others, or notes or other materials regarding his trade allocation practices. *Id.* In addition, whether Cobb has certain documents (such as compliance materials, or information regarding reviews, inquiries or complaints regarding his trade allocation practices) is independently relevant to the Investigation, even if other parties have produced those materials to the Commission because possession of these documents would be relevant to Cobb's knowledge and state of mind. *Id*. ¶ 19. Finally, the Commission, to date, has not obtained testimony from Cobb himself on the subject matter of the Investigation, and the information that would provide that is not contained or reflected in any documents produced during the Investigation. *Id*. ¶ 20.

*Fourth*, the Commission issued and served the June 26 Subpoena in accordance with "the administrative steps required." *RNR Enters.*, 122 F.3d at 96–97 (quoting *Powell*, 379 U.S. at 57–58). The June 26 Subpoena was issued by Commission staff specifically authorized by the Formal Order to issue subpoenas in the Investigation. Ellenbogen Decl. ¶¶ 4-5, 8-9. And the Commission staff properly served the June 26 Subpoena on Respondent. Ellenbogen Decl. ¶¶ 15-16 and Exs. 13, 14. The Commission provided Cobb with plenty of time to comply with the June 26 Subpoena and also personally served him with the February 27 letter. The Commission's Rules of Practice govern the procedures for Commission proceedings, including the service of investigative subpoenas. Rule 232(c) provides that service of Commission investigative subpoenas must be made under the provisions of Rule 150(b) through (d). *See* 17 C.F.R. §

201.232(c). Rule 150(d)(1) [17 C.F.R. § 201.150(d)(1)] permits personal service of Commission investigative subpoenas, which the Commission effected on Respondent. Ellenbogen Decl. ¶¶ 15-16.

Accordingly, the Commission has established a *prima facie* showing that enforcement of the subpoenas issued to Respondents is warranted.

**II. Respondent Cobb Cannot Demonstrate Any Legitimate Reason the June 26 Subpoena Should Not Be Enforced.**

Once the Commission makes a *prima facie* showing, a respondent seeking to defeat enforcement of a Commission subpoena bears the burden of demonstrating that they are "unreasonabl[e]," they are "issued in bad faith or for an 'improper purpose,'" or "compliance would be '*unnecessarily* burdensome.'" *RNR Enters.*, 122 F.3d at 97 (quoting *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973)) (emphasis in original).

Here, Cobb has refused to comply with validly-issued Commission subpoenas, and instead has ignored them, as well as the repeated attempts by the Commission staff to communicate with him regarding his compliance—much less offered any basis for his failure to comply with the June 26 Subpoena. Ellenbogen Decl. ¶¶ 11-17, 21-27. Cobb therefore has not shown and cannot show any legitimate reason.

**CONCLUSION**

For the foregoing reasons, the Commission respectfully requests that the Court order Respondent Cobb to show cause why he should not comply with the June 26 Subpoena and, absent any such cause, order them to comply with the subpoenas.

Dated: April 9, 2024
New York, New York

Respectfully submitted,

/s/ Richard G. Primoff
Richard G. Primoff
Lindsay S. Moilanen

Bennett Ellenbogen
SECURITIES AND EXCHANGE COMMISSION
New York 100 Pearl Street, Ste. 20-100
New York, NY 10004
*Attorneys for Applicant*
*Securities and Exchange Commission*